UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BENJAMIN HENDREN,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN PATTON,<br>JAMAR REED,<br>ANTHONY EWING,<br>DERONALD DAVIS,<br>JEREMIAH BLAXSTONE,<br>BRASFIELD & GORRIE, LLC,<br>BRASFIELD & GORRIE, LP,<br>JACKSON BUSSEY, and<br>MOSES PAIGE,<br><br>    Defendants. | Civil Action File No.:<br><br>**<u>JURY TRIAL DEMANDED</u>** |

## **<u>COMPLAINT</u>**

1.  This is a case for the unlawful detention of a photojournalist and the interference with his work. The Georgia State University Police Department Defendants arrested and detained Plaintiff Benjamin Hendren for approximately seven hours because they did not like that he was photographing their arrest of protestors who had allegedly damaged a construction site. The GSU Defendants knew Plaintiff was not involved but arrested him anyway.

2. Additionally, and in the alternative, the Brasfield Gorrie Defendants falsely reported that Plaintiff committed crimes at the construction site. In fact, Plaintiff did not go to the construction site. He first photographed the protestors about half a mile away from the construction site during a traffic stop after they had left the scene.

## JURISDICTION AND VENUE

3. This case is brought pursuant to the First, Fourth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983 as against the GSU Defendants. Plaintiff brings claims under state law against the Brasfield Gorrie Defendants.

4. This Court has jurisdiction of federal claims under 28 U.S.C. §§ 1331 and 1343. The Court has pendent jurisdiction of state law claims under 28 U.S.C. 1367.

5. Plaintiff seeks monetary damages, attorney fees, and costs under 42 U.S.C. § 1988.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims arose in this district and division.

## PARTIES

7. Plaintiff Benjamin Hendren is a photojournalist and a Georgia resident.

8. John Patton is a Sergeant with the Georgia State University Police Department. He is sued in his individual capacity. At all times relevant to this complaint, he acted under color of law.

9. Jamar Reed is an officer with the GSUPD. He is sued in his individual capacity. At all times relevant to this complaint, he acted under color of law.

10. Anthony Ewing is an officer with the GSUPD. He is sued in his individual capacity. At all times relevant to this complaint, he acted under color of law.

11. Deronald Davis is an officer with the GSUPD. He is sued in his individual capacity. At all times relevant to this complaint, he acted under color of law.

12. Jeremiah Blaxstone is an officer with the GSUPD. He is sued in his individual capacity. At all times relevant to this complaint, he acted under color of law.

13. Patton, Reed, Ewing, Davis, and Blaxstone are sometimes collectively referred to as the GSU Defendants.

14. Brasfield & Gorrie, LLC is Delaware corporation with its principal place of business in Alabama. It is registered to do business in Georgia. It may be served via its registered agent CT Corporation System, 289 S Culver St, Lawrenceville, GA, 30046.

15. Brasfield & Gorrie, LP is Delaware corporation with its principal place of business in Alabama. It is registered to do business in Georgia. It may be served via its registered agent CT Corporation System, 289 S Culver St, Lawrenceville, GA, 30046.

16. Jackson Bussey is a Brasfield Gorrie employee. Upon information and belief, he is a Georgia resident.

17. Moses Paige is a Brasfield Gorrie employee. Upon information and belief, he is a Georgia resident.

18. The two corporate entities, Bussey, and Paige are sometimes referred to as Brasfield Gorrie or the Brasfield Gorrie Defendants.

## FACTUAL BACKGROUND

19. On the afternoon of July 29, 2022, a small group of protestors seeking to frustrate the construction of the Atlanta Public Safety Training Center entered a Brasfield & Gorrie construction site housing the GSU Convocation Center.

20. The Atlanta Public Safety Training Center, also known as "Cop City," is a controversial project and has been the subject of local, national, and international media coverage.

21. Brasfield Gorrie is also involved in constructing the Atlanta Public Safety Training Center.

22. According to police reports, the small group trespassed at the construction site, yelling things like "Stop Cop City" and "Stop Brasfield Gorrie."

23. Police reports further stated that there was property damage to walls and signage at the construction site.

24. At the time of the protest at the construction site, Benjamin Hendren was a credentialed, freelance photojournalist working for the Atlanta Journal-Constitution.

25. Hendren was parked downtown, away from the construction site.

26. Hendren never entered the construction site.

27. Hendren was not a part of the protestor group.

28. Hendren did not even observe the protestors at the construction site.

29. Instead, Hendren heard over police radio that there was law enforcement activity related to a protest and drove towards the location of the activity to document it.

30. Hendren was hired by the Atlanta Journal-Constitution on a freelance basis to document activity including opposition to "Cop City" and law enforcement response.

31. The first Hendren saw any of the alleged protestors was at a traffic stop in the Summerhill neighborhood, approximately half a mile from the construction site.

32. Hendren lawfully parked his car and began to photograph the traffic stop and subsequent arrests of the alleged protestors from a public sidewalk across the street from where the protestors were located.

33. At no point did any officer give Hendren any order to back up, and no such order would have been lawful given his location, conduct, and status as a licensed photojournalist. *See Reese v. Herbert*, 527 F.3d 1253, 1273 (11th Cir. 2008) (unlawful to "command to clear the general area entirely beyond the zone of police operation").

34. At no point did Hendren commit any crime, and at no point did he do anything that any officer could have mistaken as a crime.

35. Further, Hendren did not interfere in any way with the traffic stop that was being conducted.

36. The GSU Defendants did not like that they were being photographed, so they interfered with his photography and then ultimately arrested Hendren.

37. The GSU Defendants had no information that Hendren was part of the protestor group.

38. While the small group of protestors were all in one vehicle, which had been stopped, Hendren arrived after the traffic stop in a separate vehicle that had no connection to the small group of protestors.

39. While the small group of protestors were wearing uniform clothing, to include black and camouflage and masks, Hendren was wearing khaki pants and a button up shirt.

40. Hendren had a conspicuous lanyard around his neck carrying a photo identification of himself as a photojournalist.

41. Hendren did not say anything to anyone before he was arrested.

42. Patton, Reed, Ewing, Davis, and/or Blaxstone approached Hendren as he was taking photographs, put him in handcuffs, and told him to sit on the curb.

43. Patton was the officer who instructed the other officers to arrest Hendren.

44. Hendren told Patton, Reed, Ewing, Davis, and/or Blaxstone what was already obvious—that he was photographing the arrests but was not involved in the underlying conduct in any way.

45. Hendren asked that Patton, Reed, Ewing, Davis, and/or Blaxstone look at his press credential and talk to his editor at the Atlanta Journal-Constitution, but they refused to do so, even as Hendren's editor was on the phone.

46. Instead of releasing Hendren, the GSU Defendants attempted to humiliate him for engaging in his protected speech activity of silently photographing.

47. Patton, Reed, Ewing, Davis, and/or Blaxstone forcibly took photographs of Hendren while he was handcuffed and sat on the curb.

48. When Hendren tilted his head down to avoid being photographed, Reed and/or Blaxstone grabbed his hair and yanked his head up so he could be photographed against his will.

49. Instead of releasing Hendren, the Defendants conspired to manufacture a justification to continue to detain him.

-8-

50. Patton said to the other officers a false statement that, "I saw him at the building," or words to that effect.

51. In fact, Hendren was never at the construction site and Patton did not observe any protestors until he initiated the traffic stop out of sight from the construction site and a half mile away.

52. Patton, Reed, Ewing, Davis, and/or Blaxstone then encouraged Brasfield & Gorrie employees Bussey and Paige to falsely state that Hendren had committed criminal offenses at the construction site.

53. At all times, Bussey and Paige were Brasfield & Gorrie employees undertaking actions within the scope of their employment on behalf of their employer.

54. Each of Patton, Reed, Ewing, Davis, and Blaxstone knew that Hendren had not been at the construction site and that Brasfield & Gorrie employees Bussey and Paige's inculpatory statements were made at Patton and other's prompting.

55. Brasfield & Gorrie employees Bussey and Paige agreed to falsely inculpate Hendren and told Patton, Reed, Ewing, Davis, and/or Blaxstone that Hendren had committed criminal offenses at the construction site.

56. Brasfield & Gorrie employees Bussey and Paige knew that Hendren had not been at the construction site, but they told Patton, Reed, Ewing, Davis, and/or Blaxstone the opposite.

57. In the alternative, Brasfield & Gorrie employees Bussey and Paige should have known that Hendren had not been at the construction site, but they unreasonably told Patton, Reed, Ewing, Davis, and/or Blaxstone that he had been.

58. Reed authored a report stating that Hendren was handcuffed because Bussey and Paige identified him as a protestor inside the construction site, but, in fact, Hendren was handcuffed before Bussey and Paige ever saw him.

59. Patton, Reed, Ewing, Davis, and/or Blaxstone arranged for Hendren to be transported, still under arrest, to a GSUPD precinct.

60. Patton, Reed, Ewing, Davis, and/or Blaxstone, along with Atlanta Police Department officers, continued to search for any justification to hold Hendren.

61. But there was no justification whatsoever.

62. During this time, Atlanta Journal-Constitution officials repeatedly called law enforcement without apparent success.

63. Hendren was held for approximately seven hours before he was released.

64. Hendren was never charged with any offense.

## COUNT I
### *Fourth Amendment Unlawful Seizure*
### *Against GSU Defendants*

65. Patton, Reed, Ewing, Davis, and/or Blaxstone arrested Plaintiff by handcuffing him, refusing to let him leave, and transporting him to a secure police facility.

66. Patton, Reed, Ewing, Davis, and/or Blaxstone did not have probable cause, or arguable probable cause, to arrest.

67. Hendren suffered damages as a result of Patton, Reed, Ewing, Davis, and/or Blaxstone's actions in an amount to be determined by the enlightened conscience of a jury.

## COUNT II
### *First Amendment Retaliation*
### *Against GSU Defendants*

68. Patton, Reed, Ewing, Davis, and/or Blaxstone interfered with Plaintiff's filming and ultimately arrested Plaintiff because they did not like that he was photographing their actions.

69. Patton, Reed, Ewing, Davis, and/or Blaxstone's interference with filming and ultimate arrest of Plaintiff were adverse actions undertaken in retaliation for his speech and for the purpose of chilling his speech.

70. Plaintiff had a First Amendment right to photograph and film police officers carrying out their official duties in public, without police interference. *See Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *Bowens v. Superintendent of Miami South Beach Police Dept.*, 557 Fed. Appx. 857, 863 (11th Cir. 2014).

71. Plaintiff was photographing citizens' arrest from a safe distance away, without interfering with police activity in any way, when he was confronted and arrested.

72. The interference with Plaintiff's photographing and his arrest were triggered by, and in retaliation for, his protected activity of taking pictures of public police activity, and therefore violated the First Amendment.

73. Hendren suffered damages as a result of Patton, Reed, Ewing, Davis, and/or Blaxstone's actions in an amount to be determined by the enlightened conscience of a jury.

## COUNT III
*State Law Unlawful Seizure and False Imprisonment*
*Against Brasfield Gorrie Defendants*

74. Defendants manufactured a false reason to arrest Plaintiff.

75. There was no probable cause.

76. There was no exigency.

77. No Defendant observed Plaintiff commit a crime within their presence.

78. Plaintiff was subjected to unlawful detention for approximately seven hours as a result of Defendants' actions.

79. The two Brasfield & Gorrie entities are vicariously responsible for Bussey and Paige's actions because they were employees undertaking actions within the scope of their employment on behalf of their employer.

80. Hendren suffered damages as a result of Defendants' actions in an amount to be determined by the enlightened conscience of a jury.

## COUNT IV
### *State Law Negligence*
### *Against Brasfield Gorrie Defendants*

81. Defendants Bussey, Paige, and the two Brasfield & Gorrie entities, owed Plaintiff a duty of care to ensure that they make a reasonable investigation before reporting that a citizen had committed a criminal offense to law enforcement.

82. Defendants breached that duty of care by failing to recognize and falsely reporting that Plaintiff had never entered or been near the construction site but telling law enforcement the opposite.

83. Hendren suffered damages as a result of the Brasfield & Gorrie Defendants' actions in an amount to be determined by the enlightened conscience of a jury.

### COUNT V
*Punitive Damages*
*Against all Defendants*

84. Defendants acted with conscious indifference, reckless disregard for the consequences of their actions, an intent to injure, and malice such that an award of punitive damages is authorized under federal and Georgia law.

### COUNT VI
*Attorney Fees*
*Against all Defendants*

85. Plaintiff is entitled to recover expenses personally of litigation under O.C.G.A. § 13-6-11 because Defendants have acted in bad faith, been stubbornly litigious, and/or caused Plaintiff unnecessary trouble and expense.

86. Plaintiff is entitled to attorney fees under 42 U.S.C. § 1988 to the extent he is a prevailing party on a federal claim.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests this Court:

a) Hold a trial by jury on all issues so triable;

b) Award nominal, presumed, compensatory, special, and punitive damages to Plaintiff against Defendants in an amount to be proven at trial;

c) Award Plaintiff attorney fees under federal and state law;

d) Tax all costs of this action against Defendants;

e) Award any additional or alternative legal or equitable relief that is just and appropriate.

Respectfully submitted, this 1st day of July, 2024.

*/s/Gerald Weber*
Gerald Weber
Georgia Bar No. 744878

LAW OFFICES OF GERRY WEBER, LLC
Post Office Box 5391
Atlanta, GA 31107
404-522-0507
wgerryweber@gmail.com

*/s/Zack Greenamyre*
Zack Greenamyre
Georgia Bar No. 293002
*/s/ Samantha Funt*
Samantha Funt
Georgia Bar No. 943783

MITCHELL SHAPIRO GREENAMYRE & FUNT, LLP
881 Piedmont Avenue
Atlanta, Georgia 30309
Phone: 404-812-4747
Fax: 404-812-4740

zack@mitchellshapiro.com
sam@mitchellshapiro.com