IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| BENJAMIN HENDREN,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN PATTON, et al.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:24-CV-2921-TWT |

OPINION AND ORDER

This is a civil rights case. It is before the Court on the Brasfield Defendants'[1] Motion to Dismiss [Doc. 16]. As set forth below, the Brasfield Defendants' Motion to Dismiss [Doc. 16] is GRANTED.

## I.   Background[2]

This case involves an alleged unlawful arrest of a photojournalist while he was documenting a protest in and around a construction site at the GSU Convocation Center. Defendant John Patton is a sergeant with the Georgia State University Police Department ("GSUPD"), and Defendants Jamar Reed, Anthony Ewing, Deronald Davis, and Jeremiah Blaxstone are officers with the GSUPD. (Am. Compl. ¶¶ 8-12).[3] Defendants Brasfield & Gorrie, LLC and

---

[1] The "Brasfield Defendants" include Brasfield & Gorrie, LLC, Brasfield & Gorrie, LP, Jackson Bussey, and Moses Paige.

[2] The Court accepts the facts as alleged in the Amended Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

[3] The Court refers to these Defendants collectively as the "GSU Defendants." They are all sued in their individual capacity. (Am. Compl.

Brasfield & Gorrie, LP are companies occupying a construction site housing the GSU Convocation Center. (*Id.* ¶¶ 14-15, 19). Defendants Jackson Bussey and Moses Paige are Brasfield & Gorrie employees and were for all relevant times acting within the scope of their employment. (*Id.* ¶¶ 16-17, 53). At all relevant times, Plaintiff Benjamin Hendren was a credentialed, freelance photojournalist working for the Atlanta Journal-Constitution. (*Id.* ¶¶ 7, 24).

On July 29, 2022, protestors entered into a Brasfield & Gorrie construction site at the GSU Convocation Center seeking to frustrate the construction of the Atlanta Public Safety Training Center, known colloquially as "Cop City." (*Id.* ¶¶ 19-20). Brasfield & Gorrie is involved in the construction of the Atlanta Public Safety Training Center. (*Id.* ¶ 21). According to police reports, the protesters yelled statements like "Stop Cop City" and "Stop Brasfield Gorrie" and caused property damage to walls and signage at the construction site. (*Id.* ¶¶ 22-23).

The Plaintiff was not a part of the protest, never entered the construction site, and did not observe the protesters at the construction site. (*Id.* ¶¶ 26-28). He was instead parked downtown and heard over police radio that there was law enforcement activity related to a protest. (*Id.* ¶¶ 25, 29). The Plaintiff was hired by the Atlanta Journal-Constitution to document activity including opposition to the Atlanta Public Safety Training Center and

---

¶¶ 8-12).

law enforcement response. (*Id.* ¶ 30). Accordingly, the Plaintiff drove towards the location of the protest to photograph it. (*Id.* ¶ 29).

The Plaintiff first saw alleged protestors when he was at a traffic stop approximately half a mile away from the construction site. (*Id.* ¶ 31). He parked his car and began to photograph the traffic stop and the subsequent arrests. (*Id.* ¶ 32). He did not interfere with traffic, commit any crime, or do anything that may be mistaken as a crime. (*Id.* ¶¶ 34-35). Moreover, while the protestors were in one vehicle wearing similar clothing (including wearing black and camouflage clothing as well as masks), the Plaintiff arrived in a separate vehicle and was wearing khaki pants, a light color button up shirt, no mask, and a lanyard around his neck with a photo identification of himself as a photojournalist. (*Id.* ¶¶ 38-40).

One or more of the GSU Defendants approached the Plaintiff while he was taking photographs. (*Id.* ¶ 42). They put him in handcuffs and told him to sit on the curb. (*Id.*) The Plaintiff did not say anything to anyone before he was arrested. (*Id.* ¶ 41). Afterwards, he told the GSU Defendants that he was not involved in the protests and was only photographing the arrests. (*Id.* ¶ 44). He also told them to look at his press credentials and talk to his editor at the Atlanta Journal-Constitution, but they refused to do so, even though his editor was on the phone. (*Id.* ¶ 45). Instead, the GSU Defendants forcibly took photographs of the Plaintiff while he was handcuffed and sat on the curb. (*Id.*

¶ 47). When the Plaintiff tilted his head to avoid being photographed, Defendant Reed and/or Defendant Blaxstone "grabbed his hair and yanked his head up so he could be photographed against his will." (*Id.* ¶ 48).

The Defendants conspired to manufacture a justification to continue detaining him rather than release him. Defendant Patton—the individual who gave the order to arrest the Plaintiff—made a false statement to the effect that he saw the Plaintiff at the construction site. (*Id.* ¶¶ 43, 50). The GSU Defendants "then encouraged Brasfield & Gorrie employees Bussey and Paige to falsely state that Hendren had committed criminal offenses at the construction site." (*Id.* ¶ 52). They made suggestive statements to Defendants Bussey and Paige, such as, "Yeah, we got 'em . . . They say they didn't go into the building . . . so because they saying [sic] that, we want to positively get some witnesses to say . . . so we can say, 'y'all verified, y'all saw them in the building.'" (*Id.* ¶ 59).

In response—without having seen the people the GSU Defendants were talking about—they replied, "[t]hey did went [sic] into the building. They fucking lying." (*Id.* ¶ 60). When they reached the spot where the Plaintiff was photographing, they said, "that's him . . . that's his fucking ass." (*Id.* ¶ 61). Thus, even though Defendants Bussey and Paige knew (or should have known) that the Plaintiff had not been at the construction site, they told the GSU Defendants that he had been. (*Id.* ¶¶ 56-57). Each of the GSU Defendants knew

4

that these inculpatory statements were false and made at the GSU Defendants' prompting. (*Id.* ¶ 54). Nevertheless, Defendant Reed wrote a report stating that the Plaintiff was handcuffed because Defendants Bussey and Paige identified him as a protester. (*Id.* ¶ 67).

The GSU Defendants arranged for the Plaintiff to be transported to a GSUPD precinct while still under arrest. (*Id.* ¶ 68). They continued to search for justifications to hold the Plaintiff. (*Id.* ¶ 69). After being held for approximately seven hours, the Plaintiff was released without being charged with any offense. (*Id.* ¶¶ 72-73).

Based on these events, the Plaintiff asserts § 1983 claims against all of the Defendants for violations of his First and Fourth Amendment rights. (*Id.* ¶¶ 76-87). He further asserts state law claims of false imprisonment and negligence against the Brasfield Defendants. (*Id.* ¶¶ 88-97). Finally, the Plaintiff seeks punitive damages and litigation expenses from all Defendants. (*Id.* ¶¶ 98-100). The Brasfield Defendants now move to dismiss all of the claims against them.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is

"improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III. Discussion

The Court will start by considering the Brasfield Defendants' arguments as to the § 1983 claims. Then, it will turn to the substantive state law claims. Finally, it will address the derivative claims.

#### A. Section 1983 Claims

The Brasfield Defendants argue that they cannot be held liable under 42 U.S.C. § 1983 because they were not state actors. (Defs.' Br. in Supp. of Mot.

6

to Dismiss, at 10-14). The Plaintiff asserts that they have sufficiently alleged cognizable theories of conspiracy and coercion. (Pl.'s Br. in Opp'n to Mot. to Dismiss, at 6-12). The Court finds that dismissal of these claims is warranted.

"A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (citation omitted). "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." *Id.* One of three conditions must be met to do so:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test");
>
> (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or
>
> (3) "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[]" ("nexus/joint action test").

*Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (citation omitted). The Plaintiff contends that it has met the first and third condition. (Pl.'s Br. in Opp'n to Mot. to Dismiss, at 12).

Starting with the first condition, the Plaintiff points to direct quotes from the GSU Defendants, an opinion from the Fulton County Superior Court

7

stating that the GSU Defendants had "used impermissibly suggestive tactics to ensure a positive identification," and allegations that directly state that the identification was the result of state compulsion. (*Id.*). The Plaintiff, however, misses the point. The Brasfield Defendants do not argue that the Plaintiff has failed to adequately allege that the statements were impermissibly encouraging. Rather, they assert that the action alleged to be unconstitutional—i.e., the arrest—had already occurred when the GSU Defendants allegedly encouraged the Brasfield Defendants to inculpate the Plaintiff. (Defs.' Br. in Supp. of Mot. to Dismiss, at 11-14).

The more responsive argument appears in a footnote of another section of the Plaintiff's brief. There, he states,

> The Brasfield Defendants repeatedly assert that Plaintiff was arrested "before" they gave the false identification to the GSU Defendants. That is the opposite of what Plaintiff alleges. However, (1) Plaintiff does allege that the GSU Defendants had decided to arrest him before the identification and (2) Plaintiff did allege that he was arrested before Brasfield's false identification in his original complaint before obtaining the video that shows a different sequence of events.

(Pl.'s Br. in Opp'n to Mot. to Dismiss, at 4-5 n. 2). The source of the confusion about the timing of the arrest can be found in the Amended Complaint. It contains conflicting accounts.

On the one hand, the Amended Complaint states that the GSU Defendants "approached Hendren as he was taking photographs, put him in handcuffs, and told him to sit on the curb." (Am. Compl. ¶ 42). After that, it

8

alleges that the GSU Defendants refused to look at the Plaintiff's press credentials or talk to his editor and instead forcibly photographed him while he was handcuffed and sitting on the curb. (*Id.* ¶¶ 45-48). Defendant Patton stated something to the effect that he saw the Plaintiff at the construction site. (*Id.* ¶ 50). The GSU Defendants "*then* encouraged Brasfield & Gorrie employees Bussey and Paige to falsely state that Hendren had committed criminal offenses at the construction site." (*Id.* ¶ 52) (emphasis added). A plain reading of these paragraphs leads to the inescapable conclusion that the Plaintiff was already detained when the GSU Defendants sought inculpatory statements from the Brasfield Defendants.

On the other hand, some later allegations flatly state the opposite. One paragraph states, "Hendren was not arrested until Bussey and Paige falsely inculpated Hendren at the GSU Defendants' prodding." (*Id.* ¶ 58). Another says, "Hendren was arrested immediately after Bussey and Paige's false identification." (*Id.* ¶ 66).[4]

"While courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductive there from, they need not accept factual claims that are internally inconsistent." *Willis v. Arp*,

---

[4] The Amended Complaint says nothing about the video that the Plaintiff alludes to in his brief, nor does the Plaintiff provide the video along with his brief. The Court therefore cannot say what that video depicts—let alone whether it may properly be considered at this stage of the litigation.

165 F. Supp. 3d 1357, 1359 (N.D. Ga. 2016) (citation omitted); *see also McMahon v. City of Riviera Beach*, 2008 WL 4108051, at *3 (S.D. Fla. Aug. 28, 2008) ("[W]hen reviewing a motion to dismiss, a court is not required to accept factual claims that are internally inconsistent." (quotation marks and citation omitted)); *Thomas v. Kamtek, Inc.*, 143 F. Supp. 3d 1179, 1188-89 (N.D. Ala. 2015) ("Contrary to alternative or inconsistent claims or defenses, factual assertions in pleadings are judicial admissions conclusively binding on the party that made them." (quotation marks and citation omitted)).

These internally contradictory allegations as to the timing of the arrest are fatal to the Plaintiff's § 1983 claims against the Brasfield Defendants. "The state compulsion test . . . limits state action to instances in which the government has coerced or at least significantly encouraged *the action alleged to violate the Constitution*." *Nat'l Broad. Co., Inc. v. Commc'ns Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988) (citations omitted) (emphasis added). The allegedly unconstitutional action here is the arrest, which interfered with his work as a photojournalist and detained him with knowledge of his innocence. (Am. Compl. ¶ 1). Thus, if the GSU Defendant talked to the Brasfield Defendants after the arrest was made, then "the action alleged to violate the Constitution" had already happened. Whatever coercion occurred at that point is insufficient to turn the Brasfield Defendants into state actors for a previous—independently made—arrest. *Compare Smith v. Brookshire*

10

*Bros., Inc.*, 519 F.2d 93, 94 (5th Cir. 1975) (per curiam) (finding state action when there was a preconceived plan between the police and store owners)[5] *with Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc.*, 673 F.2d 771, 772 (5th Cir. 1982) (distinguishing *Smith* by stating "[t]here was no similar abdication of state authority shown here; the uncontradicted evidence was that the police officer made his own determination of cause to arrest."). Since the Amended Complaint contradicts itself as to the timing of the arrest, the Court finds that it fails to plausibly allege that the "state compulsion test" is satisfied.

The Plaintiff's conspiracy-based theory fails for the same reason. One of the requirements for asserting a conspiracy under § 1983 is that the "plaintiff alleged all defendants 'acted in concert' *when the constitutional violation was committed.*" *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1379 (S.D. Ga. 2015) (citation omitted) (emphasis added). Moreover, "[t]he Eleventh Circuit has explained that the linchpin for conspiracy is agreement, which presupposes communication." *Id.* (quotation marks and citation omitted). For the reasons stated above, the Plaintiff has failed to plausibly allege that any communication—and therefore any conspiracy—occurred between the GSU Defendants and the Brasfield Defendants at the time of the alleged

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding all the decisions of the Fifth Circuit that were handed down prior to October 1, 1981.

constitutional violation.[6] Therefore, the Court will dismiss Counts I and II as to the Brasfield Defendants for failure to plausibly allege state action.

## B. Substantive State Law Claims

The Plaintiff asserts two substantive state law claims against the Brasfield Defendants: false imprisonment and negligence. "False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. § 51-7-20. The Brasfield Defendants challenge the false imprisonment claim based on the timing of the arrest. (Defs.' Br. in Supp. of Mot. to Dismiss, at 17-22). The Court agrees. As discussed above, the Amended Complaint does not plausibly allege that the Brasfield Defendants inculpated the Plaintiff before his arrest because it is internally contradictory. If the GSU Defendants arrested the Plaintiff before talking with the Brasfield Defendants, then the decision to detain the Plaintiff was made independent of the Brasfield Defendants' statements. When officers use their independent judgment to detain an individual, a false imprisonment claim cannot be maintained against a private informant. *See Jacobs v. Shaw*, 219 Ga. App. 425, 426-27 (1995) *overruled on other grounds by Infinite Energy, Inc. v. Pardue*, 310 Ga. App.

---

[6] This is true regardless of whether the conspiracy falls under the third condition of the state action requirements for private parties or whether it is an independent basis for asserting a cognizable claim. The Court does not address this distinction or any other argument related to these claims.

355, 362-63 (2011); *McLeod v. Pruco Life Ins. Co.*, 215 Ga. App. 177, 179 (1994) *overruled on other grounds by Ferrell v. Mikula*, 295 Ga. App. 326, 333 (2008). Therefore, the Plaintiff's false imprisonment claim fails and will be dismissed.

Turning to negligence, the Brasfield Defendants argue that this claim is not distinct from the Plaintiff's false imprisonment claim and should fall for the same reasons. (Defs.' Br. in Supp. of Mot. to Dismiss, at 22). In response, the Plaintiff asserts that there is a duty to conduct a reasonable investigation before reporting a crime to law enforcement that is separate from the false imprisonment statute. (Pl.'s Br. in Opp'n to Mot. to Dismiss, at 13-14). The Plaintiff's position is unpersuasive. The only difference that the Plaintiff identifies between this duty[7] and the duty not to falsely imprison someone under O.C.G.A. § 51-7-20 is scienter. (Pl.'s Br. in Opp'n to Mot. to Dismiss, at 13). However, regardless of whether the action alleged here was intentional or merely negligent, negligence still requires causation. *See, e.g.*, *Parris v. 3M Co.*, 595 F. Supp. 3d 1288, 1331 (N.D. Ga. 2022) ("Causation is an essential element of negligence." (citation omitted)). The Plaintiff provides no reason to believe that the causation analysis for his negligence claim should be different from the analysis for his false imprisonment claim.[8] Seeing none either, the

---

[7] The Court assumes *arguendo* that this duty does exist.
[8] Namely, the Brasfield Defendants' negligent statements could not cause the Plaintiff's detainment if he was already detained when they made the statements.

Court will dismiss the Plaintiff's negligence claim.

### C. Derivative Claims

Since none of the substantive claims against the Brasfield Defendants have survived, the Plaintiff's derivative claims for litigation expenses and punitive damages will also be dismissed. *See, e.g.*, *J. Andrew Lunsford Props., LLC v. Davis*, 257 Ga. App. 720, 722 (2002) ("[T]he claims seeking attorney fees and punitive damages were properly dismissed as derivative of the other dismissed claims.").

### IV. Conclusion

For the foregoing reasons, the Brasfield Defendants' Motion to Dismiss [Doc. 16] is GRANTED. Counts I, II, V, VI are dismissed as to the Brasfield Defendants. Counts III and IV are dismissed in their entirety.

SO ORDERED, this ___21st___ day of March, 2025.

THOMAS W. THRASH, JR.
United States District Judge