IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BENJAMIN HENDREN,

    Plaintiff,

      v.

JOHN PATTON, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:24-CV-2921-TWT

## OPINION AND ORDER

This is a civil rights case. It is before the Court on the Brasfield Defendants'[1] Motion to Dismiss [Doc. 67]. As set forth below, the Brasfield Defendants' Motion to Dismiss [Doc. 67] is GRANTED.

### I.   Background[2]

This case involves an alleged unlawful arrest of a photojournalist while he was documenting a protest in and around a construction site at the GSU Convocation Center. John Patton is a sergeant with the Georgia State University Police Department ("GSUPD"), and Jamar Reed, Anthony Ewing, Deronald Davis, and Jeremiah Blaxstone are officers with the GSUPD. (2d Am.

---

[1] The "Brasfield Defendants" include Defendants Brasfield & Gorrie, LLC, Brasfield & Gorrie, LP, Jackson Bussey, and Moses Paige.

[2] The Court accepts the facts as alleged in the Second Amended Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

Compl. ¶¶ 8-12 [Doc. 59]).[3] Defendants Brasfield & Gorrie, LLC and Brasfield & Gorrie, LP are companies working a construction site housing the GSU Convocation Center. (*Id.* ¶¶ 14-15, 19). Jackson Bussey and Moses Paige are Brasfield & Gorrie employees and were for all relevant times acting within the scope of their employment. (*Id.* ¶¶ 16-17, 45). At all relevant times, Plaintiff Benjamin Hendren was a credentialed, freelance photojournalist working for the Atlanta Journal-Constitution. (*Id.* ¶¶ 7, 25).

On July 29, 2022, protestors entered into a Brasfield & Gorrie construction site at the GSU Convocation Center seeking to frustrate the construction of the Atlanta Public Safety Training Center, known colloquially as "Cop City." (*Id.* ¶¶ 19-20). Brasfield & Gorrie is involved in the construction of the Atlanta Public Safety Training Center. (*Id.* ¶ 21). According to police reports, the protesters yelled statements like "Stop Cop City" and "Stop Brasfield Gorrie" and caused property damage to walls and signage at the construction site. (*Id.* ¶¶ 22-23).

The Plaintiff was not a part of the protest, never entered the construction site, and did not observe the protesters at the construction site. (*Id.* ¶¶ 27-29). He was instead parked downtown and heard over police radio

---

[3] Officers Patton, Reed, Ewing, Davis, and Blaxstone were Defendants in this action, formerly known as the "GSU Defendants." Before the Brasfield Defendants filed their Motion to Dismiss, the GSU Defendants filed a Motion for Summary Judgment. (*See generally* GSU Defs.' Mot. for Summ. J. [Doc. 64]). The Court granted this motion, rendering the GSU Defendants non-parties to this action. (*See generally* GSU Defs.' Mot. for Summ. J. Op. & Or. [Doc. 85]).

that there was law enforcement activity related to a protest. (*Id.* ¶¶ 26, 30). The Plaintiff was hired by the Atlanta Journal-Constitution to document activity including opposition to the Atlanta Public Safety Training Center and law enforcement response. (*Id.* ¶ 32). Accordingly, the Plaintiff drove towards the location of the protest to photograph it. (*Id.* ¶ 30).

The Plaintiff first saw alleged protestors when he was at a traffic stop approximately half a mile away from the construction site. (*Id.* ¶ 33). He parked his car and began to photograph the traffic stop and the subsequent arrests. (*Id.* ¶ 34). He did not interfere with traffic, commit any crime, or do anything that may be mistaken as a crime. (*Id.* ¶¶ 36-37). Moreover, while the protestors were in one vehicle wearing similar clothing (including wearing black and camouflage clothing as well as masks), the Plaintiff arrived in a separate vehicle and was wearing khaki pants, a light color button up shirt, no mask, and a lanyard around his neck with a photo identification of himself as a photojournalist. (*Id.* ¶¶ 63-65).

One or more of the GSUPD officers approached the Plaintiff while he was taking photographs. (*Id.* ¶ 66). They put him in handcuffs and told him to sit on the curb. (*Id.*). Afterwards, he told the GSUPD officers that he was not involved in the protests and was only photographing the arrests. (*Id.* ¶ 69). He also told them to look at his press credentials and talk to his editor at the Atlanta Journal-Constitution, but they refused to do so, even though his editor was on the phone. (*Id.* ¶ 70). Instead, the GSUPD officers forcibly took

photographs of the Plaintiff while he was handcuffed and sat on the curb. (*Id.* ¶ 72). When the Plaintiff tilted his head to avoid being photographed, Officers Reed and/or Blaxstone "grabbed his hair and yanked his head up so he could be photographed against his will." (*Id.* ¶ 73).

The Defendants conspired to manufacture a justification to continue to prolong the Plaintiff's ordeal. (*Id.* ¶¶ 74, 76). A Major with the Atlanta Police Department encouraged the GSUPD officers to arrest the protestors, acknowledging that arresting them would be a reach. (*Id.* ¶ 75). Officers Reed and Davis asked Defendants Bussey and Paige to come with them in their vehicle and ride over to the Summerhill neighborhood for a show-up. (*Id.* ¶ 44). Bussey and Paige were selected from a large number of construction workers due to their enthusiasm. (*Id.*). Before Defendants Bussey and Paige saw the detained individuals, Officer Reed suggested to the employees that they caught the protestors, saying, "yeah, we got 'em." (*Id.* ¶ 47).

In response—without having seen the people the GSUPD officers were talking about—they replied, "[t]hey did went [sic] into the building. They fucking lying." (*Id.* ¶ 50). Officers Reed and Davis continued to encourage this form of identification by Defendants Bussey and Paige. (*Id.* ¶¶ 51-52). When they arrived to the area where the detainees were seated, Officer Reed told Defendants Bussey and Paige that they did not have to get out of the vehicle for identification (despite not being able to clearly see the detainees from their vantage point), but Defendants Bussey and Paige joked that they wanted to

4

get out so they could do something to the handcuffed detainees. (*Id.* ¶ 53). They ultimately identified the detainees despite not being able to see them. (*Id.* ¶ 55).

At this point, Officers Reed and Davis knew that Defendants Bussey and Paige only needed the slightest invitation to positively identify an individual. (*Id.* ¶ 56). Officer Reed said that the Plaintiff "could possibly be" part of it to Defendants Bussey and Paige. (*Id.* ¶ 57). When they reached the spot where the Plaintiff was photographing, they ultimately said after feeding off each other and the officers, "[t]hat's him right there. Get his ass. He's the video guy. He's a liar." (*Id.*). But Defendants Bussey and Paige were the individuals who lied, leading to the Plaintiff being handcuffed. (*Id.* ¶¶ 58, 78). Each of the GSUPD officers knew that these inculpatory statements were false and made at the GSUPD officers' prompting. (*Id.* ¶¶ 61-62). Nevertheless, Officer Reed wrote a report stating that the Plaintiff was handcuffed because Defendants Bussey and Paige identified him as a protester. (*Id.* ¶ 79).

After the Plaintiff was detained, the GSUPD officers continued to search for justifications to hold the Plaintiff. (*Id.* ¶ 80). During this time, the Plaintiff continued to offer proof of his innocence. (*Id.* ¶ 82). The Plaintiff also asked whether he was being arrested or detained, and the supervisor for the Atlanta Police Department stated that he was only detained but deferred to the other officers. (*Id.* ¶ 83). But during the detention, the Plaintiff was handcuffed and not free to leave. (*Id.* ¶ 84). He was eventually transferred to a police station

and continued to be detained. (*Id.* ¶ 86). After being held for approximately seven hours, the Plaintiff was released without being charged with any offense. (*Id.* ¶¶ 87-88).

Based on these events, the Plaintiff filed suit against the Defendants under Section 1983 and state law. (*See generally* Compl. [Doc. 1]; Am. Compl. [Doc. 9]). The Brasfield Defendants moved to dismiss the Amended Complaint for failure to state a claim against them. (*See generally* Brasfield Defs.' Previous Mot. to Dismiss [Doc. 16]). The Court granted this motion. (*See generally* Brasfield Defs.' Mot. to Dismiss Op. & Or. [Doc. 34-1]). After seeking leave from the Court to correct the deficiencies noted by the Court's Opinion and Order granting dismissal, the Plaintiff filed his Second Amended Complaint. (*See generally* Pl.'s Mot. to Amend Compl. [Doc. 27]; Pl.'s Mot. to Amend Compl. Op. & Or. [Doc. 57]; 2d Am. Compl. [Doc. 59]). The Brasfield Defendants now seek to dismiss all claims against them within the Second Amended Complaint for failure to state a claim. (*See generally* Brasfield Defs.' Mot. to Dismiss [Doc. 67]).

## II.  Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim; however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the

possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the Court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III. Discussion

Under the Second Amended Complaint, the Plaintiff brings federal claims against the Brasfield Defendants under 42 U.S.C. § 1983 for unlawful seizure under the Fourth Amendment and First Amendment retaliation. (*See* 2d Am. Compl. ¶¶ 104-15). The Plaintiff also brings state law claims against the Brasfield Defendants for unlawful seizure, false imprisonment, and negligence. (*See id.* ¶¶ 116-27). Finally, the Plaintiff requests punitive damages and attorney's fees from the Brasfield Defendants. (*See id.* ¶¶ 128-30). While the Plaintiff has modified the factual background within his

Second Amended Complaint, the claims brought against the Brasfield Defendants are the same as within the Amended Complaint. (*See* Am. Compl. ¶¶ 76-100).

In this Court's previous Opinion and Order addressing the Brasfield Defendants' Motion to Dismiss as to the Amended Complaint, the Court noted several inconsistencies within the pleading that proved fatal to all claims against the Brasfield Defendants. Specifically, the Court found that factual inconsistencies within the Amended Complaint as to when the Brasfield Defendants were involved in the arrest of the Plaintiff required the Court to dismiss the federal law claims against the Brasfield Defendants and the state law false imprisonment claim entirely. (*See* Brasfield Defs.' Mot. to Dismiss Op. & Order, at 8-12). Additionally, the Court dismissed the Plaintiff's negligence claim because the claim was not distinct from the Plaintiff's false imprisonment claim. (*See id.* at 13-14). Finally, the Court dismissed the Plaintiff's claims for attorney's fees and punitive damages because no substantive claims remained against the Brasfield Defendants. (*See id.* at 14).

After the Plaintiff filed his Second Amended Complaint purporting to correct these deficiencies, the Brasfield Defendants once more move to dismiss the claims against them within the Second Amended Complaint for several reasons. First, they argue that the Plaintiff's federal claims cannot stand against the Brasfield Defendants because they were not state actors or operating under the color of state law. (*See* Br. in Supp. of Brasfield Defs.' Mot.

8

to Dismiss, at 7-17 [Doc. 67]). Second, they argue that the Plaintiff's First Amendment retaliation claim should be dismissed because they were not aware of the protected speech that the Plaintiff claims retaliation for. (*See id.* at 17-18). Third, they argue that the state false imprisonment claim should be dismissed against the Brasfield Defendants because the Plaintiff was identified and slated for detention by the GSUPD officers before the Brasfield Defendants were involved. (*See id.* at 18-21). Fourth, they argue that the Plaintiff's state law negligence claim should be dismissed against the Brasfield Defendants because they fail to plead the requisite causation. (*See id.* at 21-22). Finally, they argue for the dismissal of claims related to attorney's fees and punitive damages for the failure to plead any substantive claims. (*See id.* at 23). The Court addresses each argument in turn.

### A.  Brasfield Defendants as State Actors

"A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (citation omitted). "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." *Id.* One of three conditions must be met to do so:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test");

9

(2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or

(3) "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[]" ("nexus/joint action test").

*Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (citation omitted).

The Plaintiff argues that the Brasfield Defendants are state actors under the state compulsion test and the nexus/joint action test. (*See* Pl.'s Br. in Opp'n to Brasfield Defs.' Mot. to Dismiss, at 5-13 [Doc. 70]). First, the Court addresses whether the Plaintiff remedied the factual defects present within the Court's previous Opinion and Order.

As this Court has previously stated, both the state compulsion test and the nexus/joint action test (which the Plaintiff asserts through his conspiracy-based theory) require a private entity to have coordinated with the State *when the constitutional violation was committed. See Nat'l Broad. Co., Inc. v. Commc'ns Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988) ("The state compulsion test . . . limits state action to instances in which the government has coerced or at least significantly encouraged *the action alleged to violate the Constitution*." (citation modified) (emphasis added)); *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1379 (S.D. Ga. 2015) (in discussing the requirements for asserting a conspiracy under Section 1983, stating that "plaintiff alleged all defendants 'acted in concert' *when the constitutional*

10

*violation was committed.*" (citation omitted) (emphasis added)). Despite the Court's rejection of the Plaintiff's position that this showing at the motion to dismiss stage is unnecessary, the Plaintiff returns with an almost identical brief attempting to succeed on his argument that such a showing is not required under his conspiracy theory.

Addressing the Plaintiff's arguments head-on demonstrates the flaw in the Plaintiff's position. The Plaintiff strongly relies on *Burrell v. Bd. Of Trs. of Ga. Mil. Coll.*, 696 F. Supp. 1522 (M.D. Ga. 1988), to establish that evidence of a conspiracy between a private entity and a state officer is sufficient to satisfy the state actor requirement for a Section 1983 claim at the motion to dismiss stage. (Pl.'s Br. in Opp'n to Brasfield Defs.' Mot. to Dismiss, at 5-6). In *Burrell*, the plaintiff alleged that a private party defendant, First Federal, conspired with a state actor, the GMC Board of Trustees, to terminate the plaintiff's employment in violation of her constitutional rights. 696 F. Supp. at 1524. The plaintiff alleged that the conspiracy happened prior to First Federal's decision to terminate the plaintiff's employment. *Id.* at 1523. Because the plaintiff "has alleged that the GMC Board of Trustees conspired with the officers and Board Members of First Federal to have her terminated," the court concluded that the Section 1983 claim survived the motion to dismiss. *Id.* at 1524. Thus, the court's conclusion was predicated on the fact that the conspiracy occurred before the private party violated the plaintiff's constitutional rights. *See id.* at

11

1523. In fact, every case cited by the Plaintiff in support of his conspiracy theory is similarly predicated on this order of events.[4]

But despite arguing against the Court's previous holding, the Court finds that the Plaintiff has remedied the identified defects of the Amended Complaint within his Second Amended Complaint as to the timeline issue. The Second Amended Complaint now states that the actual detention and arrest of the Plaintiff happened after the identification provided by Defendants Bussey and Paige. According to the allegations, the GSUPD officers sought to manufacture a reason to detain the Plaintiff and asked him for identification, which the Plaintiff provided. (2d Am. Compl. ¶¶ 38, 41). At that time, the Plaintiff was not detained. (*See id.* ¶ 41). Officers Reed and Davis then returned to the construction site and brought Defendants Bussey and Paige to

---

[4] *See Am. Fed'n of Lab. and Cong. of Indus. Orgs. v. City of Miami, FL*, 637 F.3d 1178, 1191-92 (11th Cir. 2011) (on a motion for summary judgment, considering certain evidence of a conspiracy prior to the violation of the plaintiffs' alleged constitutional rights); *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) ("A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed *that resulted* in the actual denial of some underlying constitutional right." (citation omitted) (emphasis added)); *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1379 (S.D. Ga. 2015) (in reviewing the standard for pleading conspiracy for a Section 1983 claim, acknowledging that the defendants have to agree and act together to deprive a plaintiff of their constitutional rights before the actual violation occurs); *Zivojinovich v. Ritz Carlton Hotel Co., LLC*, 445 F. Supp. 2d 1337, 1340-41, 1345 (M.D. Fla. 2006) (holding that the plaintiff's conspiracy-based Section 1983 claim survives a motion to dismiss when the defendants alleged conspiracy occurred prior to the unconstitutional act); *Charles v. Johnson*, 18 F.4th 686, 696-97 (11th Cir. 2021) (discussing communications between a private party and a state officer to determine whether a conspiracy existed to render the private party a state actor).

identify other protestors and the Plaintiff as the individuals who were present at the construction site. (*Id.* ¶ 44). After suggestive commentary from Officer Reed, Defendants Bussey and Paige falsely stated that the Plaintiff was trespassing. (*See id* ¶¶ 47-57). Only then was the Plaintiff detained and handcuffed. (*See id.* ¶¶ 58, 66-67). Thus, assuming that the Plaintiff has adequately pled that the Brasfield Defendants are state actors under Section 1983, the timeline deficiency has been sufficiently remedied. The Court now turns to whether the Plaintiff has sufficiently pled facts to support a finding that the state compulsion test or the nexus/joint action test applies.

### 1. State Compulsion Test

"'The state compulsion test . . . limits state action to instances in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution.'" *Hill v. Raulston*, 2026 WL 280675, at \*2 (11th Cir. Feb. 3, 2026) (quoting *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003)). The Plaintiff argues that the Brasfield Defendants are state actors under the state compulsion test because the GSUPD officers encouraged Defendants Bussey and Paige to falsely identify the Plaintiff as present at the protest in order to detain and arrest him. (Pl.'s Br. in Opp'n to Brasfield Defs.' Mot. to Dismiss, at 11).

This argument fails on its face. The underlying offending action for the Fourth Amendment unlawful seizure and First Amendment retaliation claims is the GSUPD officers' detention and arrest of the Plaintiff. (*See* 2d Am. Compl.

13

¶¶ 104, 110). While the Plaintiffs also allege that the GSUPD officers encouraged the Brasfield Gorrie Defendants to falsely identify the Plaintiff as a precursor to his arrest and detention, the Brasfield Gorrie Defendants themselves were not encouraged to detain and arrest the Plaintiff by the GSUPD officers, as required by the state compulsion test. It is irrelevant that Defendants Bussey and Paige were upset that the protestors were interfering with their work and thus falsely identified the Plaintiff because the retaliatory action was the detention and arrest itself, which was not carried out by the Brasfield Gorrie Defendants. (*See id.* ¶¶ 110-11).

In any case, the Plaintiff presents no legal authority to support his position that the state compulsion test applies. This is important whether a private party is a state actor is determined on a case-by-case basis, *Focus on the Family*, 344 F.3d at 1277, and the Plaintiff cannot present even an analogous instance where a court has concluded that a private party is a state actor. The Court will not extend the state compulsion test to conduct that is squarely constitutional. Thus, the Plaintiff has not adequately alleged that the Brasfield Defendants are state actors under the state compulsion test.

### 2. Nexus/Joint Action Test

"'The nexus/joint action test applies where the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Hill*, 2026 WL 280675 at *2 (quoting *Focus on the Family*, 344 F.3d at 1277). "To charge a private party

14

with state action under this standard, the governmental body and private party must be intertwined in a symbiotic relationship. The Supreme Court has indicated that the symbiotic relationship must involve the specific conduct of which the plaintiff complains." *Focus on the Family*, 344 F.3d at 1278. In *Charles*, the Eleventh Circuit explained the following tests to determine whether the nexus/joint action test is satisfied:

> Under the joint action test, the Supreme Court has held that a 'willful participant in joint activity with the State or its agents' is a state actor. *See United States v. Price*, 383 U.S. 787, 794 [ ] (1966). At least three threads of cases have arisen under this doctrine. First, a private citizen can be held liable when he or she conspires with a state actor to deprive the plaintiff of his constitutional rights. *See id.*; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 [ ] (1970). Second, the state can make an active choice to partner with a private entity in a way that can impart liability. *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357-58 [ ] (1974); *Gilmore v. City of Montgomery*, 417 U.S. 556, 574 [ ] (1974); *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 [ ] (1961). Last, a private citizen can take up the mantle of sovereignty through the *ex parte* use of civil or criminal processes. *See Lugar* [*v. Edmondson Oil Co.*], 457 U.S. [922, 924 (1982)]; *Bendiburg v. Dempsey*, 909 F.2d 463, 469 (11th Cir. 1990).

*Charles*, 18 F.4th at 696.

Whether a private entity is a state actor under the nexus/joint action test is an intensive fact-specific inquiry. *Id.* (citing *Burton*, 365 U.S. at 722). But a district court may properly dismiss a Section 1983 claim under the nexus/joint action test if a plaintiff fails to plead adequate facts within his complaint that supports such a finding. *See Emmanuelli v. Priebus*, 500 F. App'x 886, 889 (11th Cir. 2012) (affirming district court's dismissal of a plaintiff's Section 1983 claim because the plaintiff failed to adequately plead

15

sufficient facts within his complaint); *Leitgeb v. Sark Wire Corp. – GA*, 2023 WL 5607882, at *2-3 (11th Cir. Aug. 30, 2023) (same).

The Plaintiff argues that the Brasfield Defendants are state actors under the first of the three tests enumerated by *Charles* because the Brasfield Defendants conspired with the GSUPD officers to deny the Plaintiff his constitutional rights. (*See* Pl.'s Br. in Opp'n to Brasfield Defs.' Mot. to Dismiss, at 5, 10-11). "To establish a prima facie case of [S]ection 1983 conspiracy, a plaintiff must show, among other things, that the defendants reached an understanding to violate his rights." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002) (citation modified). "'The linchpin for conspiracy is agreement, which presupposes communication.'" *Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 880 (11th Cir. 2016) (quoting *Bailey v. Bd. Of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992)).

The Plaintiff argues that the factual requirement to allege a conspiracy under Section 1983 is low. (Pl.'s Br. in Opp'n to Brasfield Defs.' Mot. to Dismiss, at 5-7). This is incorrect. Even at the Motion to Dismiss stage, "[a] showing of conspiracy requires more than conclusory allegations and a 'mere scintilla of evidence.'" *Pittman*, 662 F. App'x at 880 (citing *Rowe*, 279 F.3d at 1283-84); *see Sheets v. Woelk*, 817 F. Supp. 3d 1246, 1253 (M.D. Fla. 2026). "A plaintiff bringing a conspiracy claim must inform the defendants of the nature of the conspiracy alleged . . . [i]t is not enough to aver in the complaint that a conspiracy existed." *Pittman*, 662 F. App'x at 880 (citing *Fullman v. Graddick*,

16

739 F.2d 553, 556-57 (11th Cir. 1984)). Such conspiracy allegations must be particularized, not vague and conclusory. *Id.* (quoting *GJR Invs. v. Cnty. of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998), then citing *Fullman*, 739 F.2d at 556-57). "The claims must include enough factual allegations to 'raise a right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 554). Finally, and separate from these enumerated pleading requirements, the Eleventh Circuit has held that "a civilian's rendering of brief, *ad hoc* assistance to a law enforcement officer is not state action, absent proof of a conspiracy to violate the constitutional rights of another." *Charles*, 18 F.4th at 697.

The Court turns to the Second Amended Complaint and reviews the allegations under the guidance provided by the Eleventh Circuit. According to the allegations in the Second Amended Complaint, it is clear that the GSUPD officers and Defendants Bussey and Paige wanted to detain and arrest the Plaintiff. (*See* 2d Am. Compl. ¶¶ 38, 40-41, 44, 46, 47, 49-52, 54, 57, 66, 71, 72-73, 75, 86-88, 90, 111). What is important is the specific communications between the GSUPD officers and Defendants Bussey and Paige as alleged by the Second Amended Complaint. After Officers Reed and Davis picked up Defendants Bussey and Paige to identify the protestors for them, Officer Reed told them, "yeah, we got 'em." (*Id.* ¶ 47). After arriving at the location of the detained individuals, Officer Reed asked Defendants Bussey and Paige if the individuals were the ones who were present at the construction site, to which Defendants Bussey and Paige agreed. (*Id.* ¶¶ 49-50). Officer Reed then thanked

17

Defendants Bussey and Paige for their identification. (*Id.* ¶ 52). After Officer Reed, Officer Davis, and Defendants Bussey and Paige reached where the Plaintiff sat, Officer Reed said that the Plaintiff "could possibly be" part of the protest. (*Id.* ¶ 57). As alleged in the Second Amended Complaint, Officers Reed and Davis knew that Defendants Bussey and Paige were likely to give a positive identification with the slightest invitation. (*Id.* ¶ 56). Defendants Bussey and Paige then confirmed that the Plaintiff was present by saying "That's the video guy?" and "That's him right there. *Get his ass*. He's the video guy. He's a liar." (*Id.* ¶ 57).

The Court concludes that these communications do not adequately allege that the Brasfield Defendants were state actors, even when construing all facts in the Second Amended Complaint in favor of the Plaintiff. *See Quality Foods de Centro Am., S.A.*, 711 F.2d at 994-95. This is because "[m]erely making a report of perceived misconduct and furnishing information to the police" does not transform a private party into a state actor." *Kelly v. Broward Sheriff's Office Dept. of Detention's*, 560 F. App'x 818, 821 (11th Cir. 2014). As another court put it, "[i]t is not enough to show that a private citizen and the police communicated. The court must be able to infer a shared, unlawful goal to violate the Constitution." *Sheets*, 817 F. Supp. 3d at 1253 (citing *Rowe*, 279 F.3d at 1283). Where allegations suggest that state officials used a private party as an unsuspecting pawn in their investigation of the plaintiff, they do not establish an agreement. *Id.*; *Pittman*, 662 F. App'x at 881.

18

That allegations within the Second Amended Complaint fall into several categories that the Eleventh Circuit has explicitly excluded from the evidence necessary to form a Section 1983 conspiracy. First, as people present at the construction site, Defendants Bussey and Paige only supplied information to the GSUPD officers for the purpose of identifying the people present at the protest for the benefit of the police officers. This information, in turn, gave the GSUPD officers justification to arrest the protestors and the Plaintiff. The fact that Defendants Bussey and Paige wished for these individuals to be arrested parallels the facts in *Kelly*, where the court held that an individual reporting a possible Peeping Tom was not a state actor working in concert with the police officers. *Kelly*, 560 F. App'x at 819, 821.

Second, and similar to the rule discussed above, the facts alleged within the Second Amended Complaint amount to brief, *ad hoc* assistance by Defendants Bussey and Paige to a law enforcement officer. *See Charles*, 18 F.4th at 697. Defendants Bussey and Paige had no prior relationship to Officers Reed and Davis. Under the allegations of the Second Amended Complaint, the first time that the parties appear to interact is when Defendants Reed and Davis sought to find construction workers who could positively identify the protestors and the Plaintiff. (*See* 2d Am. Compl. ¶ 44). The communications between the parties show no agreement and concern the assistance the GSUPD officers needed from Defendants Bussey and Paige. In fact, the only communication between the Brasfield Defendants and the

19

GSUPD officers concerning the Plaintiff relates purely to identification matters, and shows no agreement at all. (*See* 2d Am. Compl. ¶ 57).

To this point, the Plaintiff disagrees and argues that a reasonable jury could find an agreement between the Brasfield Defendants and the GSUPD officers to deny Plaintiff's constitutional rights. (Pl.'s Br. in Opp'n to Brasfield Defs.' Mot. to Dismiss, at 12-13). After a review of the Eleventh Circuit's decision in *Charles*, the Court disagrees. In that case, an officer was struggling to arrest the plaintiff for an outstanding warrant during a traffic stop. *Charles*, 18 F.4th at 691. During the struggle, a bystander, the private party defendant, is heard asking, "Sir, can you get a cuff on him?" *Id.* at 691-92. The bystander then proceeds to assist the police officer in restraining the plaintiff by putting him in a "chokehold" or "full nelson." *Id.* at 692. Due to these events, the plaintiff brought a Section 1983 action against the bystander for excessive force in violation of the Fourth and Fourteenth Amendments. *Id.* at 693.

In reviewing whether the bystander's actions satisfied the nexus/joint action test to convert his actions into state action, the Eleventh Circuit noted that, even under a conspiracy theory, the pleadings should demonstrate that a "symbiotic relationship" existed between the private party and the police officer. *See id.* at 696. Ultimately, the Eleventh Circuit held that "brief, *ad hoc* assistance to a law enforcement officer is not state action" and concluded that the bystander's actions did not amount to anything more than that. *Id.* at 697.

The Eleventh Circuit's ruling in *Charles* imposes a standard of what must be demonstrated for a plaintiff to assert that a private party was a state actor under the nexus/joint action test. But the Plaintiff's allegations fail to surmount the evidence before the court in *Charles*. Even considering the extrinsic evidence before the Court,[5] the communications between the GSUPD officers and Defendants Bussey and Paige show no agreement between the GSUPD officers and the Brasfield Defendants and instead relate to the assistance Defendants Bussey and Paige are providing to the police officers. In fact, the extrinsic evidence shows even more definitively that there was no agreement "that the Brasfield Defendants [would] provide the justification of the arrest of anyone" the GSUPD officers say, as the Plaintiff argues. (Pl.'s Br. in Opp'n to Brasfield Defs.' Mot. to Dismiss, at 11-12).

---

[5] Generally, when ruling on a motion to dismiss, the Court may not consider any evidence beyond the face of the complaint and any additional documents attached thereto. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). But this rule is not absolute. An exception exists when either the defendant or the plaintiff attaches exhibits to his motion to dismiss or responsive briefing, respectively, and the exhibits are (1) central to the plaintiff's claim and (2) their authenticity is not disputed. *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162 (11th Cir. 2019) (citation omitted). The Plaintiff refers to certain exhibits submitted within the GSUPD officers' Motion for Summary Judgment to argue that there was ample communication between the GSUPD officers and Defendants Bussey and Paige for a reasonable jury to conclude that a conspiracy existed. (*See* Pl.'s Br. in Opp'n to Brasfield Defs.' Mot. to Dismiss, at 11-12). The Court will consider these exhibits because the communications between the parties are central to determining whether the Brasfield Defendants are state actors and the Brasfield Defendants do not dispute the authenticity of the exhibits.

Another key difference between the facts underlying *Charles* and the ones present here is that the bystander in *Charles* actually participated in the unconstitutional conduct complained of. In *Charles*, the Plaintiff's excessive force claim related directly to the bystander's "chokehold" or "full nelson" on the plaintiff while rendering assistance to the police officer. *See id.* at 692-93. Here, the Plaintiff's Fourth and First Amendment claims were predicated on the detention and arrest by the GSUPD officers. (*See* 2d Am. Compl. ¶¶ 104, 110). Nowhere in the pleadings does it state that the Brasfield Defendants participated in the actual detention or arrest of the Plaintiff. With no requisite communication or any direct action that relates directly to the constitutional violation, the Court concludes that the Brasfield Defendants' assistance amounts to "brief, *ad hoc* assistance" by a private party that does not amount to state action. *See Charles*, 18 F.4th at 693.

Third, the facts alleged under the Second Amended Complaint strongly suggest that Defendants Bussey and Paige were used as unsuspecting pawns in the GSUPD officers' plot to detain and arrest the Plaintiff. *See Sheets*, 817 F. Supp. 3d at 1253 (citing *Rowe*, 279 F.3d at 1283); *Pittman*, 662 F. App'x at 881. As discussed earlier, the GSUPD officers had a strong desire to arrest the Plaintiff and were under orders to arrest as many possible protestors as possible. (*See* 2d Am. Compl. ¶¶ 38, 40-41, 44, 46, 47, 49-52, 54, 57, 66, 71, 72-73, 75, 86-88, 90, 111). The GSUPD officers selected Defendants Bussey and Paige for assistance exactly because they were enthusiastic about identifying

the protestors. (*See id.* ¶ 44). The Plaintiff then details several suggestive comments the GSUPD officers made in order to prompt their "pawns"— Defendants Bussey and Paige—to positively identify the protestors and the Plaintiff despite knowing that such comments were improperly suggestive. (*See id.* ¶¶ 47, 49-57, 61). Indeed, the Second Amended Complaint explicitly states that, "following [Officers] Reed and Davis' prompting, [Defendants] Bussey and Paige falsely identified Hendren as a person who committed criminal offenses at the construction site, despite knowing that Hendren had not been at the construction site" and that Defendants "Bussey and Paige's false identification was significantly encouraged by the GSUPD officers' improper comments and suggestions." (*Id.* ¶¶ 59-60). Contrary to any communications showing any form of agreement, the Plaintiff's allegations demonstrate a situation where the GSUPD officers used Defendants Bussey and Paige to provide some justification for arresting the Plaintiff, knowing that Defendants Bussey and Paige already harbored animosity for anyone they perceived to be at the protest. (*See id.* ¶ 53 ("Bussey and Paige joked that they wanted to get out so they could do something to the handcuffed detainees")).

Thus, the Plaintiff's allegations fall into three categories that the Eleventh Circuit has explicitly excluded from the evidence necessary to form a Section 1983 conspiracy. The fact that the Second Amended Complaint states that Defendants "Bussey and Paige's false identification was part of a joint enterprise with the GSUPD officers to falsely inculpate persons potentially

23

involved with the Stop Cop City protests" does not save the claims against the Brasfield Defendants. (*See* 2d Am. Compl. ¶ 76). "While courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductive there from, they need not accept factual claims that are internally inconsistent." *Willis v. Arp*, 165 F. Supp. 3d 1357, 1359 (N.D. Ga. 2016) (citation omitted); *see also McMahon v. City of Riviera Beach*, 2008 WL 4108051, at \*3 (S.D. Fla. Aug. 28, 2008) ("[W]hen reviewing a motion to dismiss, a court is not required to accept factual claims that are internally inconsistent." (citation modified)); *Thomas v. Kamtek, Inc.*, 143 F. Supp. 3d 1179, 1188-89 (N.D. Ala. 2015) ("Contrary to alternative or inconsistent claims or defenses, factual assertions in pleadings are judicial admissions conclusively binding on the party that made them." (citation modified)). Additionally, a "district court is not required to accept as true [the plaintiff's] conclusions of law when considering a Rule 12(b)(6) motion to dismiss." *Solis-Ramirez v. U.S. Dept. of Justice*, 758 F.2d 1426, 1429 (11th Cir. 1985).

Alleging that the Defendants were part of a joint enterprise speaks directly to whether a Section 1983 conspiracy exists and is a legal determination that a court must make in order to find that a private party is a state actor. *See Rowe*, 279 F.3d at 1283 (requiring a finding that the private party and state officers came to an understanding to violate the rights of the plaintiff). Thus, the Court owes no deference to the allegation. But even if the Court did, such an allegation would be internally inconsistent with the facts

24

alleged through the rest of the Second Amended Complaint. As discussed, the allegations and extrinsic evidence more clearly demonstrate that there was no agreement between the GSUPD officers and the Brasfield Defendants to violate the Plaintiff's rights. Assuming that the Plaintiff's conclusion is a finding of fact, stating that the Defendants formed a joint enterprise runs counter to the rest of the alleged facts. Accordingly, the Court owes no deference to the specific paragraph in coming to its conclusion.

In sum, because state action is required to bring a Section 1983 claim against a defendant, *Harvey*, 949 F.2d at 1130, and the Plaintiff has failed to plead such, the Court dismisses the Section 1983 claims (Counts I and II) against the Brasfield Defendants.

### B. False Imprisonment

The Plaintiff brings a state-law false imprisonment claim against the Brasfield Defendants under Count III of the Second Amended Complaint. (*See* 2d Am. Compl. ¶¶ 116-123). "False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. § 51-7-20. It is an intentional tort. *Examination Mgmt. Servs., Inc. v. Steed*, 340 Ga. App. 51, 55 (2016). "Generally, one who causes or directs the arrest of another by an officer without a warrant may be held liable for false imprisonment, in the absence of justification." *Ferrell v. Mikula*, 295 Ga. App. 326, 330 (2008) (citation modified). A private informant may be liable for false imprisonment. *Id.* "The

25

party need not expressly request an arrest[ ] but may be liable if his conduct and acts 'procured and directed the arrest.'" *Id.* (citation omitted).  A private informant is not liable for false imprisonment "because he 'merely relates facts to an official who then makes an independent decision to arrest.'" *Id.* (citation omitted). The question of whether an officer made an independent decision to arrest the plaintiff is generally a factual question for the jury. *Id.* But a court may resolve the question of causation on a motion to dismiss where there is no need to further develop the factual record for a false imprisonment claim. *See, e.g., Orr. v. Rogers*, 2021 WL 456632, at *13 (N.D. Ga. Jan. 6, 2021); *cf. Lyle v. Heath*, 376 Ga. App. 322, 329-30 (2025) (vacating judgment of trial court where issue of qualified immunity as to the false imprisonment claim required factual discovery which had not begun and could not be resolved at the motion-to-dismiss stage).

The Court previously dismissed the state-law false imprisonment claim because of internal inconsistencies as to when the Brasfield Defendants were involved in the process of arresting the Plaintiff.  (*See* Brasfield Defs.' Mot. to Dismiss Op. & Or., at 12-13). Specifically, because the Amended Complaint inconsistently alleged that the GSUPD officers had already detained the Plaintiff when the Brasfield Defendants identified him, the Court concluded that the GSUPD officers made an independent decision to detain and arrest the Plaintiff without the Brasfield Defendants.' involvement (*See id.*). This timing issue has been remedied in the Second Amended Complaint.

26

The Brasfield Defendants now argue for the dismissal of the false imprisonment claim on the ground that the allegations still show that the GSUPD officers exercised independent judgment in deciding to arrest the Plaintiff without the Brasfield Defendants' involvement. (Br. in Supp. of Brasfield Defs.' Mot. to Dismiss, at 21). The Court agrees.

The allegations show that the GSUPD officers already decided that they planned to detain the Plaintiff before the Brasfield Defendants were ever involved. This began when the Plaintiff began to photograph the detention of the alleged protestors while the GSUPD officers were detaining them. (2d Am. Compl. ¶ 34). The Plaintiff's lawful actions led to the GSUPD officers attempting to figure out how to detain the Plaintiff. (*Id.* ¶ 38). Indeed, according to the allegations, Officer Patton began fabricating reasons to arrest the Plaintiff by claiming that he thought the Plaintiff was present at the construction site despite knowing that he was not there. (*Id.* ¶¶ 39-40). Officer Reed then approached the Plaintiff, who identified himself as a photographer. (*Id.* ¶ 41). Officer Davis also sought to falsely place the Plaintiff at the scene of the construction site to detain him. (*Id.* ¶ 42). Because the GSUPD officers could not detain the Plaintiff on these suppositions, the GSUPD officers then sought the involvement of the Brasfield Defendants in order to manufacture some cause to arrest him. (*Id.* ¶¶ 43-44). This is clarified later in the Second Amended Complaint, as the Plaintiff states that the GSUPD officers "had already conspired to retaliate against Hendren *before the false identification.*"

(*Id.* ¶ 79 (emphasis added)). Additionally, the Plaintiff includes a paragraph from a state court proceeding where the court concluded that the police officers used impermissibly suggestive tactics to ensure a positive identification. (*Id.* ¶ 89). From there, the GSUPD officers manipulated Defendants Bussey and Paige into identifying every protestor, including the Plaintiff, by making suggestive comments. (*Id.* ¶¶ 47, 49-57, 61). Additionally, once Defendants Bussey and Paige allowed the GSUPD officers to arrest the Plaintiff, the GSUPD officers made sure to humiliate the Plaintiff and prolong the injurious conduct. (*Id.* ¶¶ 66-75).

In the face of these allegations, the Plaintiff makes two arguments that the Brasfield Defendants caused his false imprisonment. First, he argues that extrinsic evidence and the allegations in the Second Amended Complaint show that Defendants Bussey and Paige pushed the GSUPD officers to arrest the Plaintiff, making the issue a jury question. (Pl.'s Br. in Opp'n to Brasfield Defs.' Mot. to Dismiss, at 16). Second, he argues that, because the allegations show that Defendants Bussey and Paige made false identifications, a jury could find the Brasfield Defendants liable for false imprisonment.

The Plaintiff's arguments contain two glaring errors. First, the Plaintiff puts the cart before the horse because he ignores the predicate causation required. The fact that Defendants Bussey and Paige made statements directing the GSUPD officers to arrest the Plaintiff does not create a jury question as to whether the Plaintiff exerted control because the Second

28

Amended Complaint plainly states that the GSUPD officers intended to arrest the Plaintiff even before the identification. The statements made by Defendants Bussey and Paige did not move the needle at all. *See Steed*, 340 Ga. App. at 56 (finding that an informant was not liable for false imprisonment when the officer made an independent judgment to arrest the plaintiff separate from the information provided). This same reasoning defeats the Plaintiff's second argument because, as cited by the Plaintiff, supplying false information to a police officer only makes an informant liable for false imprisonment when the false information unduly influenced the authorities. (*See* Pl.'s Br. in Opp'n to Brasfield Defs.' Mot. to Dismiss, at 17).

Second, the Plaintiff fails to provide adequate authority supporting his claim that the knowing provision of false information to an officer creates a claim for false imprisonment. The Plaintiff cites *Wolf Camera, Inc. v. Royter*, 253 Ga. App. 254, 258 (2002), to make his second argument, asserting that "'[a] person may be liable where he gave information to the investigating officer which he knew to be false' because doing 'so unduly influenced the authorities.'" (*See* Pl.'s Br. in Opp'n to Brasfield Defs.' Mot. to Dismiss, at 17). The Court will not conclude such a quote is misleading, but it does acknowledge that this argument comes close. Nowhere within the Plaintiff's case is false imprisonment discussed at all. The quoted portion of the case only discusses the state law tort of malicious prosecution, *not false imprisonment. See Wolf Camera, Inc.*, 253 Ga. App. at 258. Because the Plaintiff provides no other legal

29

authority, this argument is wholly unpersuasive. Therefore, because the Plaintiff failed to adequately allege a claim against the Brasfield Defendants as to his false imprisonment count, the Court dismisses Count III in its entirety.

### C. Negligence

The Plaintiff's remaining substantive claim against the Brasfield Defendants arises out of negligence. (*See* 2d Am. Compl. ¶¶ 124-127). To state a cause of action for negligence, "a plaintiff must establish the following essential elements: (1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the breach and the injury." *Martin v. Ledbetter*, 342 Ga. App. 208, 211 (2017) (citation omitted). The Brasfield Defendants once again argue that the Plaintiff cannot establish causation. (*See* Br. in Supp. of Brasfield Defs.' Mot. to Dismiss, at 21-22). In response, the Plaintiff briefly reviews every element of his negligence claim. (*See* Pl.'s Br. in Opp'n to Brasfield Defs.' Mot. to Dismiss, at 18-19). Had the Plaintiff not done so, the Court may have been inclined to preserve the claim.

First, the Plaintiff asserts that the Brasfield Defendants owe a duty to the Plaintiff to "make a reasonable investigation" before reporting a crime to law enforcement. (*Id.*). In making this assertion, the Plaintiff cites three cases in different contexts. (*Id.* (citing *Melton v. LaCalamito*, 158 Ga. App. 820, 824 (1981), then citing *Douglas v. State*, 327 Ga. App. 792, 795 (2014), then citing *Colonial Oil Indus. Inc. v. Underwriters Subscribing to Policy Nos.*

30

*TO31504670 and TO31504671*, 268 Ga. 561, 562 (1997)). But *Melton* does not even concern a duty and *Douglas* and *Colonial Oil Indus. Inc.* involve duties imposed in specialized circumstances. Indeed, applying these cases to the negligence context would be comparing apples to oranges and such arguments border on frivolous.

In *Melton*, the question of whether an individual made a reasonable investigation before reporting a crime was in relation to establishing the fundamental elements of a malicious prosecution claim. *Melton*, 258 Ga. App. at 824. Specifically, that question is relevant to determining whether a defendant would have a reasonable belief that there was probable cause for prosecution. *Id.* at 823-24. In any case, this is not an issue of duty. In *Douglas*, the court was concerned with a lawyer's "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Douglas*, 327 Ga. App. at 795 (citation omitted). Not only is this a duty imposed on a lawyer, but it is one that is relevant to the court's inquiry in an ineffective assistance of counsel claim. *Id.* at 794-95. Finally, in *Colonial Oil Indus.*, the court discusses an insurer's duty to conduct a reasonable investigation into a complaint filed against an insured. *Colonial Oil Indus Inc.*, 268 Ga. at 562. In other words, the duty arises out of some contractual indemnification obligation between two parties and is not one that exists even in tort. Thus, the Plaintiff has not presented to the Court any legal authority that allows him to bring a negligence claim against the Brasfield

31

Defendants under some duty to make a reasonable investigation before reporting a crime to law enforcement.

Without a predicate duty, there is no breach. *See Martin*, 342 Ga. App. at 211. Regardless, the Plaintiff asserts that "[n]egligent falsehoods leading to arrest are cognizable under Georgia law." (Pl.'s Br. in Opp'n to Brasfield Defs.' Mot. to Dismiss, at 19). Unsurprisingly, the Plaintiff cites inapplicable law for this proposition. (*Id.* (citing *Rent to Own, Inc. v. Bragg*, 248 Ga. App. 130, 131 (2001))). Neither the Brasfield Defendants nor the Court sees how *Rent to Own* applies to the case before the Court. *Rent to Own* addresses a motion for frivolous appeal damages and addresses Georgia agency law. *Rent to Own, Inc.*, 248 Ga. App. at 130-31. It fails to discuss the issue of negligent falsehoods leading to arrest at all. Accordingly, the Plaintiff has failed to allege breach.

Finally, even if the Plaintiff had properly addressed the issues of duty and breach (even though the Plaintiff did not need to), the Plaintiff provides no argument for why the causation analysis between false imprisonment and negligence should differ. The Plaintiff simply parrots his previous arguments related to false imprisonment. Indeed, Georgia courts have recognized that the causation analysis between false imprisonment and negligence is similar, if not the same. *See, e.g., Corp. Prop. Invs. v. Milon*, 249 Ga. App. 699, 705 (2001) (holding the traditional elements of negligence overlap with false imprisonment when both are brought for the same action). Because the Court concluded that the Plaintiff has not sufficiently alleged causation as to his false

imprisonment claim, the same applies to his negligence claim. Accordingly, the Court dismisses Count IV.

### D. Attorney's Fees and Punitive Damages

The Plaintiff brings claims for punitive damages and attorney's fees within the Second Amended Complaint as Counts V and VI against all Defendants. (*See* 2d Am. Compl. ¶¶ 128-29). Since none of the substantive claims against the Brasfield Defendants have survived, the Plaintiff's derivative claims for litigation expenses and punitive damages will also be dismissed. *See, e.g., J. Andrew Lunsford Props., LLC v. Davis*, 257 Ga. App. 720, 722 (2002) ("[T]he claims seeking attorney fees and punitive damages were properly dismissed as derivative of the other dismissed claims."). Thus, Counts V and VI are dismissed as to the Brasfield Defendants.

### E. Dismissal With or Without Prejudice

A dismissal with prejudice bars the Plaintiff from amending his pleadings and from later pursuing the same action against the same Defendants. *See McNair v. Johnson*, 143 F.4th 1301, 1306 (11th Cir. 2025) (explaining the consequences of a dismissal with prejudice). "Dismissal with prejudice is proper when a more carefully drafted complaint would not state a claim for relief." *Arthur v. JP Morgan Chase Bank*, NA, 569 F. App'x 669, 686 (11th Cir. 2014). Generally, district courts have discretion in determining whether to allow a plaintiff to amend his pleadings. *See Pinnacle Advert. and Mktg, Grp., Inc. v. Pinnacle Advert. and Mktg. Grp., LLC*, 7 F.4th

989, 999-1000 (11th Cir. 2021) (stating that the standard of review for a district court's decision to grant leave to amend is abuse of discretion); *but see Eiber Radiology, Inc. v. Toshiba America Medical Sys., Inc.*, 673 F. App'x 925, 929 (11th Cir. 2016) (noting that a district court's discretion to dismiss a complaint without leave to amend is "severely restricted" by Federal Rule of Civil Procedure 15(a)(2), which requires leave to amend be freely given when justice so requires).

The Eleventh Circuit generally encourages district courts to exercise their discretion in favor of allowing plaintiffs to amend their pleadings. *Id.* at 1000. However, this does not mean that every dismissal should be without prejudice. In *Arthur*, the Eleventh Circuit affirmed a district court's dismissal with prejudice when the appellants amended their complaint on three occasions and represented to the district court that they would be adding "significant additional facts" that were directly relevant to their claims in a subsequent amendment. *Id.* The Eleventh Circuit found implausible that further pleading would remedy the defects in the complaint due to the repeated amendments and the purported additions. *Id.* Additionally, when a plaintiff is represented by counsel, the Eleventh Circuit has never "required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint" and has affirmed a district court's decision to deny a plaintiff a second opportunity to amend, especially when the plaintiff failed to properly request it. *Eiber Radiology*, 673 F. App'x at 930. Here, the Court has

34

already dismissed the Plaintiff's claims against the Brasfield Defendants once. Accordingly, this second dismissal of the Brasfield Defendants is due to be with prejudice.

## IV.    Conclusion

For the foregoing reasons, the Brasfield Defendants' Motion to Dismiss [Doc. 67] is GRANTED. Counts I, II, V, and VI of the Second Amended Complaint are dismissed with prejudice as to the Brasfield Defendants. The Clerk is directed to enter judgment and to close the case.

SO ORDERED, this __9th__    day of June, 2026.

THOMAS W. THRASH, JR.
United States District Judge

35